UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BROWN,

                Plaintiff,        Civil Action No. 19-12965
                                     Honorable Terrence G. Berg
v.                                            Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 19)

Plaintiff Timothy Brown ("Brown") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 17, 19), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**      **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Brown is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Brown's Motion for Summary Judgment **(ECF No. 17)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Brown was 41 years old at the time of his alleged onset date of January 1, 2010.[1] (PageID.967).[2] At 6'1" tall, he weighed between 215 and 235 pounds during the relevant time period. (PageID.714, 983). He completed the eleventh grade but had no further education. (PageID.717, 984). Previously, he performed assembly work, along with other jobs on a sporadic and/or part-time basis, but he stopped working in 2012 because of his medical conditions. (PageID.718, 720, 970, 983-84, 991). He now alleges disability primarily as a result of back and knee pain, diabetes, and anxiety. (PageID.720-21, 723, 727, 732-33, 983).

After Brown's applications for SSI and DIB were denied at the initial level on May 6 and 12, 2014, respectively (PageID.828-31, 837-40), he timely requested an administrative hearing, which was held on September 16, 2015, before ALJ Amy

---

[1] Previously, Brown had applied for DIB and SSI, alleging disability beginning on January 1, 2010. (PageID.320, 324). On November 8, 2011, ALJ Theodore Grippo issued a written decision finding that Brown was not disabled under the Act because he was capable of performing his past relevant work as a fast-food worker. (PageID.183-93). On July 25, 2013, the Appeals Council denied review of this decision. (PageID.152-57). On March 31, 2015, the District Court entered an order remanding the case; the Court ruled that the ALJ erred in finding that Brown's prior fast-food work was "past relevant work" because his earnings from that work fell below the "substantial gainful activity" level. (PageID.796-810). On May 26, 2015, the Appeals Council issued an Order remanding the case to the ALJ with instructions to consolidate Brown's prior applications with subsequent applications for DIB and SSI filed on October 8, 2013, and to issue a new decision on the consolidated claims. (PageID.711, 813).

[2] Citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 15 and its subparts.

Rosenberg (PageID.708-42). Brown, who was represented by attorney Charles Robison, testified at the hearing, as did vocational expert ("VE") James Engelkes. (*Id.*). On December 24, 2015, the ALJ issued a written decision finding that Brown is not disabled under the Act. (PageID.687-700). On August 28, 2019, the Appeals Council found that Brown did not timely file exceptions to the ALJ's decision; thus, that decision became the Commissioner's final decision. (PageID.621-22). Brown filed for judicial review of the final decision on October 9, 2019.[3] (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Brown's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations

---

[3] Although the Commissioner raised some timeliness concerns with the filing of Brown's appeal in federal court, the Court ultimately denied the Commissioner's motion to dismiss and allowed the case to proceed on its merits. (ECF Nos. 12, 13).

3

provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Brown is not disabled under the Act. At Step One, the ALJ found that Brown has not engaged in substantial gainful activity since January 1, 2010 (the alleged onset date). (PageID.689).

At Step Two, the ALJ found that he has the severe impairments of spinal degenerative disc disease and disc bulging/herniation; left knee osteoarthritis; left foot degenerative changes; irritable bowel syndrome; high blood pressure; atrial fibrillation; obesity; affective disorder; anxiety disorder; alcohol and cannabis abuse disorders; and personality and cognitive disorders. (*Id.*). At Step Three, the ALJ found that Brown's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.694).

The ALJ then assessed Brown's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: requires a sit/stand option allowing him to change position between sitting and standing as necessary to relieve discomfort, 2-3 times per hour; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; can perform simple, routine tasks and make simple work-related decisions; and is limited to only occasional interactions with supervisors, co-workers, and the public. (PageID.695).

At Step Four, the ALJ found that Brown is unable to perform any of his past relevant work. (PageID.698). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Brown is capable of performing the light jobs of collator operator (150,000 jobs nationally), hand assembler (175,000 jobs), and sorter/folder (90,000 jobs), as well as the sedentary jobs of electronics surveillance monitor (200,000 jobs), addresser (90,000 jobs), and ticketing clerk (150,000 jobs). (PageID.699). As a result, the ALJ concluded that Brown is not disabled under the Act. (PageID.700).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

In his motion for summary judgment, Brown argues that the ALJ erred in: (1) failing to specifically discuss whether his back impairment meets or medically equals Listing 1.04A; (2) failing to properly account for all of his physical and mental impairments when formulating his RFC; and (3) giving little weight to the opinion of his treating physician, Andrea Breese, M.D.  (ECF No. 17, PageID.1441-53).  Each of these arguments is addressed below.

*1.    The ALJ's Failure to Discuss Listing 1.04A is, at Most, Harmless Error*

As set forth above, at Step Two of the sequential analysis, the ALJ found, in relevant part, that Brown has the severe impairments of spinal degenerative disc disease and disc bulging/herniation.  (PageID.689).  At Step Three, however, the ALJ did not explicitly consider whether Brown's back impairments meet or medically equal Listing 1.04 ("Disorders of the spine").  (PageID.694-95).  Brown now argues that this was error.  (ECF No. 17, PageID.1441-46).  The law is clear, however, that a court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless.  *See Forrest v.*

*Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).[4] Such an error is harmless where "'concrete factual and medical evidence' is 'apparent in the record' and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 861 (E.D. Mich. 2012) (quoting *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009)) (emphasis in original). Here, for the reasons set forth below, the evidence clearly demonstrates that Brown does not meet or medically equal Listing 1.04A, and any error in the ALJ's failure to explicitly provide a thorough Step Three analysis is harmless.

First, the ALJ relied on the opinion of the only doctor who reviewed Brown's impairments in the context of Listing 1.04, state agency physician Dinesh Tanna, M.D. (PageID.697). Dr. Tanna explicitly considered Listing 1.04 and, rather than finding that Brown's impairments meet or equal that Listing, found that Brown has the RFC for a reduced range of light work. (PageID.761-64). The ALJ gave "significant weight" to Dr. Tanna's conclusion in this respect.[5] (PageID.697). Brown does not challenge the weight

---

[4] In arguing that the ALJ's failure to specifically reference or analyze Listing 1.04A alone is grounds for remanding the matter, Brown relies on *Brock v. Colvin*, No. 3:14CV1075, 2015 WL 5102994 (N.D. Ohio Aug. 31, 2015). (ECF No. 17, PageID.1445) ("*Brock* [] is instructive where it holds that [the] ALJ's conclusory statement that the claimant's [back impairments] did not meet or medically equal the severity of the Listings 1.04(A) [] was insufficient to permit meaningful judicial review. The ALJ failed to articulate any basis for her conclusion."). However, as explained in *Roby v. Colvin*, No. 114CV00164GNSHBB, 2016 WL 164325, at *4 (W.D. Ky. Jan. 13, 2016), ". . . *Brock* is unpersuasive due to its reliance on *Reynolds* [*v. Commissioner of Social Security*, 424 Fed. Appx. 411 (6th Cir. 2011)], the applicable holding of which has been drawn into question by subsequent Sixth Circuit case law as previously discussed [including *Forrest*]. Accordingly, the Court affords no weight to *Brock*." In short, the case law cited herein reflects the current applicable standards.

[5] Although the ALJ did not discuss Dr. Tanna's opinion as part of her Step Three analysis, this does not mean that evidence cannot be considered to support that portion of the decision. *See, e.g.,*

the ALJ assigned to Dr. Tanna's opinion, and it provides substantial evidence for the ALJ's Step Three conclusion.

Moreover, even if the ALJ erred in not specifically articulating her Step Three analysis, as it relates to Brown's back impairments, such error is harmless. In order for Brown to meet the criteria of Listing 1.04A, he must show that he has a disorder of the spine (*e.g.*, herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A. It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004)

---

*Arnold v. Comm'r of Soc. Sec.*, No. 15-14068, 2016 WL 8376403, at *7 (E.D. Mich. Dec. 6, 2016) (court can find the listing analysis sufficient by looking at the ALJ's entire decision, rather than limiting its review to any particular section of the decision). As the Commissioner points out, this Court has affirmed an ALJ's Listing determination based on the ALJ's reliance, elsewhere in the decision, on a medical opinion supporting that determination. (ECF No. 19, PageID.1465) (citing *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *9 (E.D. Mich. Jan. 13, 2015) ("[T]he ALJ's cursory discussion of Listing 1.04 does not require remand, since the ALJ's opinion as a whole demonstrates sufficient consideration of the relevant evidence. For instance … [t]he ALJ [] stated that she gave great weight to the opinion of Dr. Cole. Dr. Cole opined that Plaintiff was not disabled, despite indicating that he considered Listing 1.04.")).

("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). In this case, thorough consideration of the objective medical evidence reveals no possibility that Brown meets Listing 1.04A's requirements; thus, any error committed by the ALJ in failing to explicitly consider Listing 1.04A is harmless.

Brown argues that the requirements of Listing 1.04A are satisfied by pointing to three MRIs and two positive straight leg raising tests. (ECF No. 17, PageID.1444-45). Specifically, an MRI of Brown's lumbar spine performed on September 12, 2011, showed multilevel degenerative disc disease, with focal disc protrusions at L1-L2, L2-L3, and focal central disc herniation at L3-L4 *without significant central canal stenosis or nerve root impingement*. (PageID.516-17). A follow-up MRI performed on May 1, 2013, again showed multilevel degenerative disc disease with disc desiccation and disc bulges from L1-L2 to L4-L5 *without significant central canal stenosis or neural foraminal encroachment*. (PageID.1132-33). And, an MRI of Brown's lumbar spine performed on March 28, 2015, was similar, showing degenerative disc disease with mild bulging discs from L1-L2 through L4-L5, but with *no focal herniated disc, no evidence of central canal stenosis, and no encroachment upon neuroforamina*. (PageID.1263-64). However, because these MRIs show no compromise of the nerve root – one of the required diagnostic elements of Listing 1.04A – they actually undermine his argument that he meets that Listing.

In terms of Listing 1.04A's other elements, Brown concedes that he "did not always have positive straight leg raising tests" but claims (1) that he did so at his September 2010

10

consultative examination with Amer Arshad, M.D., and (2) that he felt back pain with a straight leg raising exam in June 2011. (ECF No. 17, PageID.1445) (citing PageID.490 (noting 70 degrees straight leg raise), 543 ("Feels pain from SLR in back but not legs")). As the Commissioner points out, however, neither of these straight leg raise tests are positive for purposes of the Listing. (ECF No. 19, PageID.1468) (citing UC San Diego School of Medicine, Practical Guide to Clinical Medicine, https://meded.ucsd.edu/clinicalmed/joints6.html ("If there is nerve root irritation, the patient will experience their typical [leg] pain when the leg is elevated between 30 and 60 degrees") (last accessed March 26, 2021) and *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016 ("Lack of evidence that the straight-leg test was positive in both the sitting and supine position is itself sufficient to preclude a claimant from meeting Listing 1.04A."). Moreover, other treatment notes overwhelmingly show negative straight leg raise ("SLR") tests. (*See, e.g.,* PageID.468 (sitting and supine SLR tests negative in May 2010), 465 (same in July 2010), 610 (normal SLR test in July 2010), 1167 (same in September 2012), 1187 (same in November 2012), 1084 (same in November 2013), 1273 (no back or leg pain with SLR test in March 2014), 1199 (SLR test did not elicit pain bilaterally in either the seated or supine position at April 2014 consultative examination).

      Finally, Brown does not even attempt to show that the other elements of Listing 1.04A are met – namely, that the record contains findings of motor and sensory loss. To the contrary, as the ALJ noted, Brown's records routinely show normal strength and sensation. (PageID.610 (no lower extremity weakness or sensory findings in July 2010),

11

1167 (normal extremities with adequate strength and full range of motion in September 2012), 1084 (no evidence of lower extremity weakness, no specific sensory findings in November 2013), 1273 (normal strength in the bilateral lower extremities in March 2014), 1199 (full strength, intact sensation at April 2014 consultative examination), 1213 (good muscle strength and tone in April 2015)).  These facts also undermine Brown's Listing argument.  *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) ("To establish the equivalent of nerve-root compression, Bailey must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things ….  She cannot do so: numerous doctors' reports show the opposite of these findings.").

In summary, in the Sixth Circuit, "the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing ….  Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *see also Forrest*, 591 F. App'x at 366 ("even if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment ….").  Thus, Brown is not entitled to remand based on his argument about Listing 1.04A.[6]

---

[6] Brown also suggests that "perhaps [his] obesity accounts for [his] greater pain, as explained in SSR 02-1p, than the decision can find from *no completely debilitating pathology*." (ECF No. 17, PageID.1446) (emphasis in original).  But, contrary to this argument, which Brown makes again in his reply brief (ECF No. 20, PageID.1484), the ALJ specifically considered his obesity in the decision (PageID.540), and Brown does not explain how the ALJ's analysis fails to comply with the cited Social Security Ruling.  Moreover, in his reply brief, Brown failed to address the ALJ's

12

### 2. The ALJ Properly Accounted for Brown's Impairments in the RFC

Brown next argues that the ALJ erred in three specific ways in formulating his RFC. First, Brown challenges the ALJ's evaluation of – and decision to give considerable weight to – the opinion of consultative examiner Terrance Mills, Ph.D. (ECF No. 17, PageID.1448-50). Specifically, Brown points to Dr. Mills' statement that Brown's "ability to understand, retain, and follow simple instructions, [] perform basic, routine, and tangible tasks … [and] interact with co-workers, supervisors, and the public appears to be moderately impaired." (*Id.*, PageID.1448) (citing PageID.483). From there, Brown argues that the ALJ's RFC finding limiting him to simple, routine tasks; simple work-related decisions; and only occasional interactions with others does not adequately account for the "moderate" impairment that Dr. Mills assessed. (ECF No. 17, PageID.1448-49).

In support of his argument, Brown relies on *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 236557 (E.D. Mich. July 28, 2009) and *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), both of which are inapposite. To begin with, both of these cases deal with moderate limitations in concentration, persistence, or pace, and Dr. Mills did not assess such a limitation here; rather, he found a moderate limitation with respect to social functioning, understanding, and memory. (PageID.483). *Green* and *Edwards* also are cases in which *the ALJ* made the finding concerning the moderate

---

reliance on Dr. Tanna's opinion or the case law cited above, both of which were addressed by the Commissioner in his motion. Instead, he argues, more generally, "when the Administrative Law Judge fails to follow the Commissioner's own Regulations and that error prejudices the claimant on the merits or deprives a claimant of a substantial right, then the case will be reversed." (ECF No. 20, PageID.1482). But, for the reasons discussed above, Brown was neither prejudiced nor deprived of a substantial right by the ALJ's error.

limitation at issue, as opposed to a case like this where Brown is citing to moderate findings made by *a doctor*. Thus, neither case adequately supports Brown's argument.

Moreover, here, the ALJ gave a "good deal of weight" to the opinion of state agency psychiatrist Dennis Beshara, M.D. (PageID.697), who considered Dr. Mills' report (PageID.227-28) and, like the ALJ, found that Brown is "capable of performing unskilled work" (PageID.234). Dr. Beshara's opinion provides substantial evidence in support of the ALJ's even more restrictive conclusion that Brown can perform simple, routine tasks, make simple work-related decisions, and is limited to only occasional interactions with supervisors, co-workers, and the public. (PageID.695). *See Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *3-4 (E.D. Mich. Nov. 28, 2011) (distinguishing between cases where the ALJ relies on the opinion of a state agency doctor who had also found moderate concentration limitations, and cases where there is no such opinion that supports the ALJ's findings).[7]

Second, Brown argues that the ALJ's reliance on Dr. Beshara's opinion is "misplaced" because that opinion is stale, in that Dr. Beshara only reviewed "about one half of the [medical evidence of record]." (ECF No. 17, PageID.1450-51). This allegation is insufficient to justify remand, however, where Brown has not cited to any evidence showing that his impairments materially worsened after Dr. Beshara issued his opinion.

---

[7] Brown claims that the "RFC in the decision is more limited than the one proposed to the VE where the decision also contains a limitation of occasional interaction with co-workers and supervisors." (ECF No. 17, PageID.1450). This argument fails as it rests on a faulty premise; in fact, both the RFC adopted by the ALJ and the hypothetical posed to the VE contain the same limitations, including a limitation to occasional interaction with co-workers and supervisors. (*Compare* PageID.695 with PageID.737-38).

*See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.").

Moreover, Brown ignores that there is a more recent opinion from another state agency psychologist, Jerry Csokasy, Ph.D., who reviewed Brown's records several years *after* Dr. Beshara, yet found that the evidence did not warrant any additional RFC limitations. (PageID.764-65). Indeed, Dr. Csokasy also concluded that Brown is able to perform "simple/routine tasks on a sustained basis." (PageID.765). Brown also ignores that the ALJ considered the relevant evidence submitted after the opinions of both state agency doctors, and even assessed a slightly more limited RFC based on that more recent evidence. (*See* PageID.691-94, 697). Thus, Brown has identified no error in the ALJ's weighing of Dr. Beshara's opinion.

Finally, Brown argues that the RFC does not account for all of his impairments because it does not account "for the constant use of a cane to aid ambulation." (ECF No. 17, PageID.1451). Under Social Security Ruling 96-9p, to establish such a requirement, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Soc. Sec. Rul. 96-9p*, 1996 WL 374185, at *7 (July 2, 1996); *see also Salem v. Colvin*, No. 14-11616, 2015 WL 12732456, at *4 (E.D.

Mich. Aug. 3, 2015) (even if need for cane is "well established," claimant must still prove it is "medically required," which requires a prescription describing the circumstances for which the cane is needed). Here, Brown does not point to any medical evidence[8] establishing his need for a cane, much less a prescription for one. Therefore, this argument also fails.

### 3. The ALJ Properly Discounted the Opinions of Brown's Treating Physician

Brown's last argument is that the ALJ erred in rejecting the opinions of his treating physician, Andrea Breese, M.D. (ECF No. 17, PageID.1451-53). Dr. Breese issued two opinions – one in September 2011, where she checked a box indicating that Brown was disabled by chronic back pain (PageID.493-95), and another in October 2011, where she stated that Brown "has been unable to work due to pain" (PageID.534). As the Commissioner points out, however, these are not "medical opinions." (ECF No. 19, PageID.1475) (citing 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")). Rather, the statements

---

[8] Rather, Brown merely relies on his own testimony and the fact that a consultative examiner noted that he observed Brown using a cane. (ECF No. 17, PageID.1445, 1451). Neither of those pieces of evidence establish that Brown's use of a cane is "medically required." Brown also writes that his "conditions have continued to deteriorate and on January 4, 2019, he was approved by DHHS for 43:58 hours of home help monthly." (ECF No. 17, PageID.1451). But that proves nothing about Brown's alleged need for a cane, or that he is disabled under the Act. Moreover, the "home help" approval came more than three years after the ALJ issued her decision, and thus is of no particular relevance to the Court's "substantial evidence" evaluation. Nor does Brown argue that that new evidence is material or warrants a remand under Sentence Six.

issued by Dr. Breese are opinions on an issue reserved to the Commissioner and do not carry "any special significance." *See* 20 C.F.R. § 404.1527(d)(1), (3).

Still, the ALJ acknowledged Dr. Breese's opinions, but appropriately gave them "little weight" because "medical opinions on the ultimate question of disability are not binding on the Commissioner." (PageID.698). This alone is enough to support the ALJ's weighing of Dr. Breese's opinions. *See Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the treating doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner[.]").[9] Moreover, the ALJ reasonably found that Dr. Breese's opinions were "not well-supported by medically acceptable clinical and laboratory diagnostic techniques," particularly in light of Brown's mostly benign MRI and physical findings.[10] (PageID.698). *See Cangialosi v. Comm'r of Soc. Sec.*, No. 13-10210, 2014 WL 1260711, at *3-4 (E.D. Mich. Mar. 27, 2014) (ALJ permissibly discounted treating physician opinion based on mostly normal physical examination findings, such as normal gait, normal neurological findings, and range of motion testing). Thus, the ALJ properly gave little

---

[9] Brown claims that Dr. Breese's opinions are more than opinions on an issue reserved to the Commissioner because they are "supported by MRI evidence … and opinions from specialist physicians …." (ECF No. 17, PageID.1453). Brown is conflating issues. Regardless of the evidence, the fact remains that Dr. Breese opined only that Brown was disabled, which, as explained above, is an opinion on an issue reserved to the Commissioner. Moreover, Brown does not explain how an MRI showing no nerve compromise establishes disability. Nor are there opinions from other doctors in the record that would support Dr. Breese's conclusory opinions about disability. Thus, this argument too fails.

[10] Indeed, the MRI that was performed around the time of Dr. Breese's opinions (like subsequent MRIs) showed no significant stenosis or nerve impingement (PageID.516), and physical examination findings included no tenderness in the spine, normal flexion, normal gait, negative straight leg raising, and full range of motion of the extremities. (PageID.465, 468, 487, 543).

weight to Dr. Breese's opinions.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Brown's Motion for Summary Judgment **(ECF No. 17)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 26, 2021  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 26, 2021.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
